**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA**, | ) | |
| | ) | Civil No. 10-112 Erie |
| | ) | Criminal No. 06-59 Erie |
| | ) | Judge David S. Cercone |
| v. | ) | |
| | ) | |
| **SHANNON MATHIS**, | ) | |
| | ) | |
| | ) | |

## Opinion

This matter is before the Court upon Defendant Shannon Mathis' Motion to Vacate Judgment pursuant to 28 U.S.C. § 2255. For the reasons which follow, the motion will be denied.

## I. Factual Background

On September 19, 2006, Erie police officers observed Mathis, an African-American, riding in the back seat of a Ford Taurus driven by two white males, James Carutis and Carmen Dawson. The officers recognized Mathis as someone who was under federal supervision for a prior drug conviction and decided to follow the vehicle. Carutis and Dawson eventually dropped Mathis off at a residence on East 17th Street in Erie, Pennsylvania, before continuing to a bar known as the One Way Inn. Officers then observed Carutis using powder cocaine and immediately approached. Carutis indicated that the cocaine had been purchased from Mathis.

Shortly thereafter, Carutis and Dawson agreed to help the Erie Police Department arrange a controlled cocaine purchase from Mathis using "buy money" from the District Attorney's drug fund. Dawson set up the deal with Mathis, and officers followed Dawson's vehicle as it returned to the East 17th Street address where Mathis had been dropped off earlier that day. Officers then

observed as Mathis entered the back seat of the vehicle and was handed $140 in cash from the buy money fund from Dawson. On a signal from Dawson, officers moved in and seized Mathis.

At the time of his apprehension, Mathis was still holding the $140 in buy money in his hands. Officers also observed a small baggie of powder cocaine on the floor of the vehicle in front of Mathis. Lt. Michael Nolan of the Erie Police Department then patted Mathis down and discovered a digital scale and tied baggies of what appeared to be crack cocaine and powder cocaine in Mathis' pockets. Lt. Nolan elected not to seize the contents of Mathis' pockets until arriving at the station so that their removal could be recorded on a video camera at the station's booking counter. Officers then placed Mathis under arrest and transported him to the Erie Police Department in a police SUV.

At the booking center, Lt. Nolan removed a baggie of powder cocaine and approximately $578 in cash from Mathis' pockets, but did not find the scale and bags of crack cocaine which he had previously observed. Lt. Nolan immediately returned to the SUV and discovered each of those items on Mathis' seat in the rear of the vehicle. When confronted with the crack and the scale, Mathis denied that they were his and insisted that he could not be charged with their possession.

## II.    PROCEDURAL BACKGROUND

On October 10, 2006, a federal grand jury charged Mathis with one count of possession with intent to distribute five grams or more of crack cocaine in violation of 21 U.S.C. §§ 841(a)(1) and 841(B)(1)(b)(III) (Count One) and one count of possession with intent to distribute cocaine in violation of 21 U.S.C. §§ 841(a)(1) and 841(b)(1)(C) (Count Two). Prior to trial, the Government filed a "Notice of Intention to Introduce 404(b) Evidence at Trial" and a "Notice of Intention to

Introduce Prior Conviction as Impeachment Evidence Pursuant to Fed. R. Evid. 609." On June 1, 2007, the Court ruled that the government would not be permitted to use Mathis's prior conviction as evidence, but acknowledged that there were a number of ways in which the defense could "open the door" to such evidence being placed in front of the jury. (Pretrial Motions Hearing Transcript, Dkt. 133, p. 120).

Mathis' trial took place between June 4 and June 7, 2007, with United States District Judge Sean J. McLaughlin presiding. Mathis' primary defense at trial was that the crack cocaine and the digital scale which had been found in the backseat of the SUV had been planted by police officers as the result of a "personal vendetta" which they allegedly harbored against him. The jury rejected Mathis' proffered defense and found him guilty as to both counts of the indictment.

On March 4, 2008, Mathis was sentenced to 185 months of imprisonment and 8 years supervised release. Although the initial advisory guideline range for Mathis' conviction was 120 months, the Court increased Mathis' offense level by two levels for obstruction of justice and by an additional three levels based upon three incidents of retaliatory and threatening behavior. The resulting advisory guideline range was 151 to 188 months, resulting in Mathis' 185 month sentence.

On appeal, Mathis argued, *inter alia*, that the district court abused its discretion by granting the government's motion for an upward departure for obstruction of justice. The Third Circuit Court of Appeals denied Mathis' appeal and affirmed his conviction and sentence on July 6, 2009. See United States v. Mathis, 331 Fed. Appx. 997 (3rd Cir. 2009).

On May 10, 2010, Mathis filed the instant *pro se* motion to vacate judgment. The government filed a brief in opposition and Mathis, through appointed counsel, filed a reply brief and a supplemental brief in support of his motion. On August 28, 2013, this matter was referred

to the undersigned following Judge McLaughlin's resignation from the bench. This matter is ripe for review.

## III.    STANDARD OF REVIEW

Pursuant to 28 U.S.C. § 2255, a federal prisoner may move the sentencing court to vacate, set aside or correct a sentence "upon the ground that the sentence was imposed in violation of the Constitution or laws of the United States, or that the court was without jurisdiction to impose such sentence, or that the sentence was in excess of the maximum authorized by law, or is otherwise subject to collateral attack." 28 U.S.C. § 2255. When a motion is made pursuant to 28 U.S.C. § 2255, the question of whether to order a hearing is committed to the sound discretion of the district court. In exercising that discretion, the court must accept the truth of the petitioner's factual allegations unless they are clearly frivolous on the basis of the existing record. United States v. Day, 969 F.2d 39, 41-42 (3rd Cir. 1992). Further, the court must order an evidentiary hearing to determine the facts unless the motion and files and records of the case show conclusively that the petitioner is not entitled to relief. Id.

Here, upon consideration of Mathis' petition, the government's response thereto, and the pleadings and documents of record, the Court concludes that no hearing is warranted.

## IV.    DISCUSSION

Mathis' motion to vacate asserts a myriad of purported errors and constitutional violations, broadly grouped into the following nine grounds for relief: (1) Mathis was racially profiled in violation of his Fourth Amendment right to be free from unreasonable searches; (2) various trial court errors violated Mathis' Fifth and Sixth Amendment rights to due process and a fair trial; (3)

trial counsel's errors violated Mathis' Sixth Amendment right to effective assistance of counsel; (4) appellate counsel's errors violated Mathis' Sixth Amendment right to effective assistance of counsel; (5) the government violated Mathis' Fifth and Sixth Amendment trial rights by committing prosecutorial misconduct; (6) the Third Circuit Court of Appeals improperly denied Mathis his statutory right to an appeal pursuant to 28 U.S.C. § 15; (7) the evidence at trial was insufficient to support Mathis' conviction; (8) Mathis' sentence was procedurally and substantively unreasonable; and (9) the mandatory minimum sentence applicable to Mathis' conviction was reduced by the Fair Sentencing Act of 2010. Each will be discussed in turn.

### A. Procedural Default (Grounds One, Two, Five and Seven)

As an initial matter, the Court notes that the substantive allegations underlying Mathis' first, second, fifth and seventh grounds for relief were never raised on direct appeal. It is well-settled that claims which are not raised on direct review are procedurally barred and cannot be raised on collateral review without a showing of either actual innocence, or of "cause" for the failure to raise the claim and "actual prejudice" from the alleged error. See, e.g., Murray v. Carrier, 477 U.S. 478, 490-92 (1986) (claim not raised on direct review is procedurally defaulted); United States v. Frady, 456 U.S. 152, 170 (1982). The "cause and prejudice" standard requires a defendant to demonstrate "some objective factor external to the defense" which impeded his efforts to raise the issue earlier and that the alleged error "worked to his *actual* and substantial disadvantage, infecting his entire trial with error." Coleman v. Thompson, 501 U.S. 722, 753 (1991) (emphasis in original). In other words, the defendant must establish a "reasonable probability that the result of the trial would have been different" if not for the alleged errors. Stickler v. Greene, 527 U.S. 263. 289 (1999).

In the instant case, Mathis has completely failed to address the doctrine of procedural default or make any attempt to demonstrate cause for his failure to have raised the aforementioned claims on direct review. Moreover, a careful review of the record reveals that the evidence against Mathis at trial was overwhelming, significantly reducing the likelihood that the alleged errors worked to his actual disadvantage. See, e.g., United States v. Jenkins, 333 F.3d 151, 155 (3rd Cir. 2003) (holding that the defendant had failed to demonstrate prejudice because, *inter alia*, "[t]he evidence at trial was overwhelming"); Edmond v. Sobina, 2012 WL 3245480, *6 (W.D. Pa. 2012) (holding that the petitioner "could not establish prejudice in light of the overwhelming evidence of his guilt."). Consequently, the allegations set forth in Grounds One, Two, Five and Seven of Mathis' motion to vacate are procedurally defaulted and need not be substantively addressed.

That said, the Court notes that several of the individual claims set forth in Grounds One, Two and Five are restated elsewhere in Mathis' petition as claims of ineffective assistance of trial counsel ("IATC") and/or appellate counsel ("IAAC"). Under certain circumstances, allegations of ineffective assistance of counsel can provide "cause" for a petitioner's failure to raise an underlying claim on appeal. Murray, 477 U.S. at 488-89. However, such claims must satisfy the "rigorous standard" of Strickland v. Washington, 466 U.S. 668 (1984), which requires a defendant to show that his counsel's performance fell below an objective standard of reasonableness and that, but for the alleged error, the outcome of the proceeding would likely have been different. Strickland, 466 U.S. at 687. Moreover, even if a defendant can show "cause" for his default, he still must show "actual prejudice" from the error.

Consistent with the foregoing principles, the following procedurally defaulted claims will be addressed through the filter of Mathis' allegations of ineffective assistance of counsel: (1) racial

profiling by the Erie Police Department violated Mathis' Fourth Amendment right to be free from unreasonable searches (Ground One); the trial court sought and received an improper stipulation to drug type and quantity (Ground Two); the trial court issued an erroneous jury instruction concerning the stipulation to drug type and quantity (Ground Two); the government violated Mathis' Fifth and Sixth Amendment rights by inducing testimony from an expert witness concerning Mathis' intent to distribute drugs (Ground Five).

### B.  Ineffective Assistance of Trial Counsel (Ground 3)

In order to demonstrate ineffective assistance of counsel, Mathis must satisfy the Supreme Court's two-pronged test as set forth in Strickland, 466 U.S. 668.  This test requires him to demonstrate (i) that defense counsel's performance fell "below an objective standard of reasonableness," thus rendering the assistance so deficient that the attorney did not function as "counsel" as the Sixth Amendment guarantees, see id. at 687-88, and (ii) that counsel's ineffectiveness prejudiced the defense such that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different."  See id. at 694; Flamer v. State of Delaware, 68 F.3d 710, 727-28 (3rd Cir. 1995).  A "reasonable probability" is a probability "sufficient to undermine confidence in the outcome."  Strickland, 466 U.S. at 694.

In explaining the defendant's burden under "prong one" of this test, the Supreme Court has admonished that "[j]udicial scrutiny of counsel's performance must be highly deferential" because "[i]t is all too tempting for a defendant to second-guess counsel's assistance after conviction or adverse sentence, and it is all too easy for a court, examining counsel's defense after it has proved

unsuccessful, to conclude that a particular act or omission of counsel was unreasonable." Strickland, 466 U.S. at 689. Consequently, there is a "strong presumption" that counsel's strategy and tactics "fall[ ] within the wide range of reasonable professional assistance." Id.

Under the second prong, a criminal defendant alleging prejudice must show "that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable." Lockhart v. Fretwell, 506 U.S. 364, 369 (1993). "[A]n analysis focusing solely on the mere outcome determination, without attention to whether the result of the proceeding was fundamentally unfair or unreliable, is defective." Id.

### 1. Unsupported IATC Allegations

As an initial matter, many of Mathis' allegations of ineffective assistance of trial counsel are listed in his motion to vacate without any supporting argument, legal authority, or citations to the record. These include Mathis' assertions that trial counsel was unfamiliar with the Federal Rules of Evidence; conducted an inadequate pretrial investigation, particularly with respect to the drugs found in the back of the police SUV; failed to file various pre-trial and post-trial motions; failed to develop a comprehensive strategy for trial; failed to adequately prepare for sentencing; continued to represent Mathis despite the "hopeless[] collapse" of the attorney-client relationship; failed to adequately consult with Mathis concerning trial strategy; failed to prepare and call defense witnesses; failed to procure expert witnesses; and inadequately cross-examined the government's witnesses. (Motion to Vacate, Dkt. 166, p. 9). It is axiomatic that a habeas petitioner "cannot meet his burden to show that counsel made errors so serious that his representation fell below an objective standard of reasonableness based on vague and conclusory allegations." Zettlemoyer v. Fulcomer, 923 F.2d 284, 298 (3rd Cir. 1991); see also Mayberry v.

Petsock, 821 F.2d 179, 287 (3rd Cir. 1987) (dismissing motion to vacate where petitioner's vague and general allegations and supporting materials failed to make sufficient showing to justify relief). Moreover, a careful review of the record reveals that counsel filed numerous pre- and post-trial motions, developed and pursued a comprehensive trial strategy based upon the contention that Lt. Nolan had planted drugs on Mathis, and adequately presented and cross-examined witnesses throughout the trial. As such, each of these claims – to the extent that the Court can determine the nature of the error alleged – is demonstrably frivolous and/or requires the Court to engage in precisely the type of strategic "second-guessing" prohibited by Strickland. Strickland, 466 U.S. at 689.

## 2. 404(b) Evidence

Mathis contends that trial counsel's decision to pursue a line of questioning which opened the door to the admission of 404(b) evidence concerning Mathis' prior drug conviction fell below an objective standard of reasonableness and prejudiced the outcome of his trial. The specific incident cited by Mathis occurred during counsel's cross-examination of Lt. Nolan. As previously described, the heart of Mathis' defense was his contention that Lt. Nolan had planted drugs and drug paraphernalia in the police SUV in order to incriminate Mathis because of a "personal vendetta." At trial, defense counsel repeatedly attempted to explore Lt. Nolan's motivations for following Mathis on the day of his arrest in an attempt to establish that the officer's conduct stemmed from racial or personal bias. The prosecution objected, noting that, as the result of the Court's previous ruling that evidence of Mathis' prior conviction was inadmissible, Lt. Nolan was unable to truthfully answer that the reason he had followed Mathis was that he knew Mathis to be a drug dealer. Following a discussion at sidebar, the Court ruled that defense

counsel had opened the door to the admission of Mathis' prior convictions. However, the Court instructed Lt. Nolan to restrict his answer to the fact that he knew Mathis to have been on federal supervision as the result of a previous drug conviction and to provide no further detail. Immediately following that statement from Lt. Nolan, the Court provided the following cautionary instruction to the jury:

> Members of the jury, with respect to the testimony you just heard from Lieutenant Nolan, as to the fact that, as to his testimony, I should say, that he understood Mr. Mathis to have been on federal supervision for a previous drug conviction, I specifically instruct you that you may not consider the fact that he was on federal supervision or that he had a previous drug conviction. You may not consider either of those facts as evidence that in some way would support even the slightest inference that he was guilty of the crime for which he is charged here. Let me try to make it clearer. You may not consider the fact that he was on federal supervision or had a previous drug conviction as propensity evidence. In other words, you may not crank that into your equation at all as to whether he had a previous drug conviction, it was more likely that he was guilty of this crime. The only question or issue that you can consider those two pieces of information, is in your equation or your analysis as to what it really was that was the motivating factor for Lieutenant Nolan in pursuing Mr. Mathis that day.

(Hearing Tr., 6/5/07, pp. 21-22).

Courts have widely held that "the conduct of examination and cross-examination is entrusted to the judgment of the lawyer," and, as such, a court "should not second-guess such decisions unless there is no strategic or tactical justification for the course taken." United States v. Luciano, 158 F.3d 655, 660 (2ⁿᵈ Cir. 1998), *rev'd on other grounds*, 311 F.3d 146 (2ⁿᵈ Cir. 2002); United States v. Gordon, 335 Fed. Appx. 236, 239-40 (3ʳᵈ Cir. 2009) (noting that decisions concerning the presentment of witness testimony should not be second-guessed if they fall "within the range of professionally reasonable judgments.") (quoting Strickland, 466 U.S. at 699). In the instant case, Mathis' chosen trial strategy required counsel to directly explore Lt. Nolan's

motivations for following Mathis on the day of the arrest. Although counsel's questioning inadvertently opened the door to the potentially damaging revelation of Mathis' prior conviction, counsel's decision clearly had a "strategic or tactical justification." Luciano, 158 F.3d at 660. Such decisions should not be second-guessed with the benefit of hindsight. Strickland, 466 U.S. at 689.

Mathis has also failed to demonstrate that the fairness of his trial was prejudiced by counsel's alleged error. A similar situation was recently presented in United States v. Murphy, 2013 WL 2190104 (W.D. Pa. 2013), wherein the petitioner alleged that his counsel's performance was "deficient in cross-examining a government witness by asking an open-ended question that resulted in the witness testifying that petitioner 'had been convicted of drug charges.'" Id. at *4. The cross-examination at issue concerned a police detective's prior testimony that he had initially stopped a van occupied by the petitioner because he believed that a drug transaction was taking place. Id. When asked by defense counsel to explain his reasoning, the detective replied that he believed a drug transaction was taking place because of the petitioner's past drug convictions. Id. Despite that potentially damaging revelation, the district court determined that the petitioner had failed to demonstrate that his counsel's performance had prejudiced his trial "[i]n light of the otherwise overwhelming evidence against petitioner." Id. at *6 (concluding that "it is highly unlikely that Sergeant Spence's isolated remark regarding petitioner's prior conviction on drug charges had any influence at all on the jury's verdict.").

The Court reaches the same conclusion here. As in Murphy, the evidence against Mathis in this case was substantial. Moreover, as noted by the Third Circuit, the district court's prompt and "appropriate" cautionary instruction to the jury mitigated the likelihood of prejudice by advising the jury that they may "only consider those facts as you consider what Lieutenant Nolan's

motive was in following Shannon Mathis on the day of arrest." <u>Mathis</u>, 331 Fed. Appx. at 999; <u>see</u> <u>also</u> <u>United States v. Syme</u>, 276 F.3d 131, 155 (3rd Cir. 2002) ("As a rule, we presume . . . that the jury follows a district court's instructions."). Consequently, Mathis' claim that his attorney's performance during Lt. Nolan's cross-examination was prejudicially deficient must be rejected.

### 3. Improper Stipulation

Mathis next contends that defense counsel improperly stipulated to the type and quantity of drugs attributable to Mathis. At trial, the government called Forensic Scientist Neal Rerko to testify as to the nature of the drugs found in the baggies seized from Mathis following his arrest. Rerko had previously performed laboratory testing to determine the contents of each of the seized baggies and had prepared a report indicating the results. Noting the apparent lack of any dispute as to the type and quantity of drugs at issue, the Court queried the parties to determine whether that information might be admitted by stipulation, rather than testimony. After consulting with Mathis, defense counsel agreed to stipulate to the admission of Rerko's report. In so doing, counsel acknowledged, on the record, that those details were not at issue in the case and that Rerko's report spoke for itself. (Hearing Tr., 6/5/07, pp. 132-34). However, Mathis now contends that the Court erred in failing to colloquy Mathis on the record to determine whether he had agreed to the stipulation.

The parties do not dispute that there is nothing in the caselaw which requires a court to personally colloquy a defendant concerning every potential trial stipulation. (Brief in Reply, Dkt. 189, p. 16). Moreover, even if such a rule existed, Mathis would still be unable to demonstrate prejudice. Mathis' defense at trial was never that the baggies found in his possession did not contain drugs, but rather, that the baggies had been planted by Lt. Nolan as part of a scheme to

inculpate Mathis. Because the type and quantity of the drugs was never at issue, and because Mathis has not suggested the existence of any evidence to rebut the conclusions contained in Rerko's report, his claim is without merit.

### 4. Improper Expert Testimony

Mathis' next allegation concerns testimony provided by an expert witness for the government, Special Agent Jason Crouse, who testified at Mathis' trial as to his experiences with drug evidence, the drug trade in Northwestern Pennsylvania, and the particular manner in which drug dealers typically conduct their business. At trial, the government walked Crouse through each piece of evidence and asked him to describe the significance of each as it pertained to the drug trafficking trade. Near the end of Crouse's direct examination, the following exchange took place:

> Q: Based upon your knowledge and experience, are you able to render an opinion, to your degree of expertise, as to whether or not all of this evidence that's been presented in front of you is consistent with an intent to distribute the powder and the crack cocaine that's present here or is it more consistent with someone's personal use?
>
> A: It is most consistent with the intent to distribute both the crack and powder cocaine.
>
>      \*      \*      \*      \*      \*      \*      \*      \*      \*
>
> Q: Due to the way in which these items are packaged and present in this particular case, are those consistent with the defendant's intention to use the crack and cocaine or is it consistent in general with a possession with intent to distribute?
>
> A: The way they're packaged, especially with the half-ounce of crack cocaine, that would be a large quantity for personal use. In fact, I would not call that a personal use quantity. And the individually packaged eight balls, because of their presence with the other

> larger quantity of crack cocaine and the scale, that indicates to me
> an intention to distribute, as opposed to the possession for use.

Q:     So these are consistent with an intention to distribute?

A:     Yes, they are.

(Hearing Tr., 6/6/07, pp. 171-72).   Mathis contends that trial counsel should have objected to this line of questioning because it invited Crouse to express an opinion as to the ultimate issue of Mathis' intent.

In general, the testimony of an expert witness is admissible if it "supports an inference or a conclusion that the defendant did or did not have the requisite *mens rea*, so long as the expert does not draw the ultimate inference or conclusion for the jury." United States v. Watson, 260 F.3d 301, 309 (3rd Cir. 2001) (internal quotations omitted).   "It is settled law that an expert may testify about common behavior patterns in a profession or subculture."   United States v. Price, 458 F.3d 202, 212 (3rd Cir. 2006).   With respect to the drug trade, "experts may describe, in general and factual terms, the common practices of drug dealers."   Id. (quoting United States v. Watson, 260 F.3d 301, 309 (3rd Cir. 2001)).   However, the expert may not "directly refer[] to the defendant's intent, mental state, or *mens rea*" or supply "testimony from which it necessarily follows, if the testimony is credited, that the defendant did or did not possess the requisite *mens rea*."   Watson, 260 F.3d at 309 (quoting United States v. Bennett, 161 F.3d 171, 182 (3rd Cir. 1998)).

A careful review of Crouse's testimony at trial reveals that he never crossed this line. Crouse did not testify that Mathis had personally intended to sell the drugs in his possession, but rather, that the packaging and quantity of the drugs and the presence of the scale were consistent with an intention to distribute, rather than personal use.   See, e.g., United States v. Farrish, 297 Fed. Appx. 162, 166-67 (3rd Cir. 2008) (expert testimony "that the facts and circumstances

surrounding [defendant's] behavior were 'indicative' of someone who had the intent to deliver drugs" did not "draw the ultimate inference or conclusion for the jury."); <u>Watson</u>, 260 F.3d at 307 (noting that an expert may testify as to the "*modus operandi*" of drug dealers); <u>Price</u>, 458 F.3d at 205 (allowing an expert to testify that "[d]rug sellers almost always have a gun at hand or readily available").

Moreover, even if Crouse's testimony could be deemed improper, Mathis still cannot demonstrate prejudice. As noted above, Mathis' entire defense was that the drugs found in the SUV had been planted by police in order to make Mathis look like a drug dealer. In light of this defense, there was no strategic basis for counsel to argue that the quantity of drugs was indicative of personal use, rather than sale.


### 5. Jencks Violation

Mathis next contends that the government failed to comply with its obligations pursuant to the Jencks Act, 18 U.S.C. § 3500, and that trial counsel performed deficiently by failing to obtain and utilize the withheld Jencks material.[1] Specifically, Mathis alleges that the government failed to turn over various grand jury transcripts which Mathis believes would have assisted in his defense.

Contrary to Mathis' assertion, the record reveals that the government did provide defense counsel with the grand jury testimony of the only grand jury witness who testified, Trooper Jeffrey Tylman, prior to trial. (Government's Response to Motion to Vacate, Dkt. 180, Ex. 2). Although Mathis appears to believe that additional grand jury transcripts exist and should have

---

1 The Jencks Act obligates the government to provide the defense with certain statements and reports generated by prospective witnesses "after a witness . . . has testified on direct examination." 18 U.S.C. § 3500(b).

been provided, this is simply not the case. Moreover, to the extent that Mathis suggests that trial counsel should have used Jencks material more effectively, he has failed to identify how those materials could have been used differently or how they would have influenced the outcome of the trial. See Strickland, 466 U.S. at 694.


### 6. Fourth Amendment Violation

Finally, Mathis contends that Lt. Nolan's initial decision to follow Mathis was based entirely on Mathis' race and that this "racial profiling" resulted in a violation of Mathis' Fourth Amendment right to be free from unreasonable searches and seizures. Mathis suggests that trial counsel rendered ineffective assistance by failing to raise a Fourth Amendment objection or file a motion to suppress on this basis.

The record clearly demonstrates, however, that Lt. Nolan's initial decision to follow Mathis never resulted in a search or seizure. Mathis, through counsel, concedes this point in his reply brief, noting that any admission by Nolan that he followed Mathis based upon his race "would not have supported a motion to suppress on Fourth Amendment grounds [because] the police had not yet searched or seized anything." (Brief in Reply, Dkt. 189, p. 13). See also Terry v. Ohio, 392 U.S. 1, 19 n. 16 (1968) (holding that a Fourth Amendment seizure does not occur until "the officer, by means of physical force or show of authority, has in some way restrained the liberty of a citizen."); Texas v. Brown, 460 U.S. 730, 739 (1983) (noting that a law enforcement officer is entitled to observe the inside of a vehicle from a lawful vantage point). Moreover, Lt. Nolan testified at trial that his decision to follow Mathis was based primarily on his awareness that Mathis was a convicted drug dealer who was on federal supervised release, rather than his race. (Trial Transcript, 6/4/2007, at 62-66; 6/5/2007, at 5, 21-22).

### C.  Ineffective Assistance of Appellate Counsel (Ground Four)

Mathis' fourth ground for relief sets forth various claims of ineffective assistance of appellate counsel.   In order to establish that appellate counsel was constitutionally ineffective, a defendant "must show that counsel's performance was objectively unreasonable, and that there is a reasonable probability that the outcome of his appeal would have been different if counsel had raised the claim."   Chambers v. Bowersox, 157 F.3d 560, 566 (8th Cir. 1998).

In his original motion to vacate, Mathis contends, without supporting argument, that his appellate counsel was ineffective for continuing to represent him despite the "hopeless collapse" of their attorney-client relationship, for failing to appeal undisclosed "issues of significantly greater merit" than those selected by counsel, and for failing to argue that Mathis' Sixth Amendment confrontation rights had been violated.   Through counsel, Mathis also asserts that appellate counsel should have challenged trial counsel's stipulation as to the drug quantity and amount, trial counsel's allegedly ineffective cross-examination of Lt. Nolan, and trial counsel's failure to object to Agent Crouse's expert testimony.

The majority of these claims have already been considered by the Court and rejected in the context of Mathis' assertions of ineffective assistance of trial counsel, *supra*.   It is axiomatic that appellate counsel cannot be deemed ineffective for failing to pursue meritless issues on appeal. See, e.g., United States v. Sanders, 165 F.3d 248, 253 (3rd Cir. 1999) ("There can be no Sixth Amendment deprivation of effective counsel based on an attorney's failure to raise a meritless argument."); United States v. Jackson, 2010 WL 1688543, *8 (E.D. Pa. 2010 ("Under Strickland, Jackson's appellate counsel cannot be ineffective for failing to raise a meritless issue on appeal."); see also Strickland, 466 U.S. at 691 (failure of counsel to pursue fruitless claims "may not later be

challenged as unreasonable"). Moreover, with respect to his general contention that appellate counsel failed to raise various "stronger" claims, Mathis has failed to provide any detail concerning the potentially meritorious issues which he believes appellate counsel should have raised. As such, he cannot demonstrate that the result of his appeal "would have been different" had counsel raised those issues. See United States v. Mannino, 212 F.3d 835, 845 (3rd Cir. 2000); Zettlemoyer, 923 F.2d at 298 (3rd Cir. 1991) (habeas petitioner "cannot meet his burden to show that counsel made errors so serious that his representation fell below an objective standard of reasonableness based on vague and conclusory allegations."); Mayberry, 821 F.2d at 287 (dismissing motion to vacate where petitioner's vague and general allegations and supporting materials failed to make sufficient showing to justify relief).

### D. Denial of Right to Appeal (Ground Six)

In his sixth ground for relief, Mathis asserts that the Third Circuit Court of Appeals violated his statutory right to a direct appeal by refusing to entertain his application for substitution of counsel, allowing him to be represented by "conflicted" counsel, and by failing to consider several issues which Mathis raised in a supplemental *pro se* appellate brief. (Motion to Vacate, Dkt. 166, p. 11). However, it is well-settled that the right to a direct appeal in a criminal action stems from statute, rather than from the United States Constitution. See Martinez v. Court of Appeal of California, 528 U.S. 152, 159-60 (2000) ("The Sixth Amendment does not include any right to appeal."); Abney v. United States, 431 U.S. 651, 656 (1977) ("The right of appeal, as we presently know it in criminal cases, is purely a creature of statute."). Such claims are not cognizable on a motion to vacate unless the alleged errors rise to the level of "a fundamental defect which inherently results in a complete miscarriage of justice [or] an omission inconsistent with the

rudimentary demands of fair procedure." Reed v. Farley, 512 U.S. 339, 348 (1994) (quoting Hill v. United States, 368 U.S. 424, 428 (1962) (holding that claims which are "neither jurisdictional nor constitutional" are not ordinarily cognizable on collateral review). None of the issues raised by Mathis in his sixth ground for relief presents any such "fundamental defect." See, e.g., Martinez, 528 U.S. at 163 (finding no constitutional right to self-representation on appeal); Abusaid v. United States, 2007 WL 2852361, *3 (M.D. Fla. 2007) (defendant's request to discharge counsel and pursue his appeal *pro se* did not present a cognizable claim on collateral review).

### E.  Reasonableness of Sentence (Ground Eight)

In his eighth ground for relief, Mathis generally avers that his sentence was "procedurally and substantially unreasonable" in light of the guideline enhancements applied by the district court.  (Motion to Vacate, Dkt. 166, p. 12).  This claim was conclusively rejected by the Third Circuit on direct appeal:

> Mathis also argues that the District Court erred in calculating the applicable Guideline range and that his sentence was unreasonable.  The District Court determined that a two-level increase in the offense level for obstruction of justice, U.S.S.G. §3C1.1, was warranted.  After hearing testimony, the District Court found three instances of retaliatory and threatening behavior that were not taken into account by § 3C1.1.  One offense level point was added for each action.
>
> &ast; &ast; &ast; &ast; &ast; &ast; &ast; &ast; &ast;
>
> [W]e conclude that the District Court did not err by finding that Mathis willfully obstructed justice.  The District Court properly departed upwards for the obstruction of justice not adequately taken into consideration by the Guidelines.

Mathis, 331 Fed. Appx. at 1000.  Once a matter has been raised and rejected on direct appeal, the same issue may not be relitigated on collateral attack.  See, e.g., United States v. Smith, 235

F.Supp.2d 418, 428 (E.D. Pa. 2002) ("Section 2255 may not be employed to relitigate questions, on collateral attack, which were raised and rejected on direct appeal) (citing <u>United States v. DeRewal</u>, 10 F.3d 100, 105 n. 4 (3rd Cir. 1993) (noting that Section 2255 generally "may not be employed to relitigate questions which were raised and considered on direct appeal.")).

### F. Fair Sentencing Act

Finally, in a supplemental brief filed with the assistance of counsel, Mathis contends that his sentence should be recalculated pursuant to the Fair Sentencing Act of 2010, Pub. L. No. 111-220 ("FSA"). The FSA, in pertinent part, modified the penalties for distribution of cocaine base contained in 21 U.S.C. § 841(b)(1)(A) by revising the amount of cocaine base required to invoke various minimum terms of imprisonment. Mathis contends that his sentence must be recalculated because the FSA modified the statutory minimum term of imprisonment applicable to his offense from ten years to five years.

The Third Circuit has definitively ruled, however, that the FSA is not retroactive for defendants who were sentenced before the Act's effective date of August 3, 2010. See <u>United States v. Reevey</u>, 631 F.3d 110 (3rd Cir. 2010). In <u>Reevey</u>, the Court held:

> The general Savings Statute [1 U.S.C. § 109] requires that any intent to "release or extinguish any penalty" under an existing statute be "expressly provide[d]" in the subsequent congressional enactment. The FSA does not contain an express statement that the increase in the amount of crack cocaine triggering the . . . mandatory minimum is to be applied to crimes committed before the FSA's effective date. Nor does it provide that those sentenced before the FSA's effective date are to be re-sentenced. Therefore, the FSA cannot be applied to Reevey and Williams.

<u>Reevey</u>, 631 F.3d at 114-15; <u>see also</u> <u>United States v. Patillo</u>, 2010 WL 5018228, *5 (3rd Cir. 2010) ("[T]he Fair Sentencing Act, which was signed into law some two years after [the appellant] was

sentenced . . . does not apply retroactively.") (citations omitted); United States v. Smith, 2011 WL

710205 (E.D. Pa. 2011) ("The Fair Sentencing Act is not retroactive, however, and its amendment

. . . does not apply to Smith.").   The majority of courts which have considered the retroactivity of

the FSA with respect to defendants who were sentenced prior to its enactment have reached the

same conclusion.   See, e.g., United States v. Brewer, 624 F.3d 900, 908 n. 7 (8th Cir. 2010)

("[T]he Fair Sentencing Act contains no express statement that it is retroactive, and thus the

'general savings statute,' 1 U.S.C. § 109, requires us to apply the penalties in place at the time the

crime was committed."); United States v. Bell, 624 F.3d 803, 814 (7th Cir. 2010) ( "Like our sister

circuits that have considered this issue, [ ] we conclude that the savings statute operates to bar the

retroactive application of the FSA.").[2]

Mathis was sentenced on March 4, 2008, approximately two years before the FSA was

signed into law.   Accordingly, the amendments contained in the FSA do not apply to Mathis.


## IV.   CONCLUSION

For the reasons stated herein, Mathis' Motion to Vacate Judgment pursuant to 28 U.S.C. §

2255 will be denied.   Moreover, the Court concludes that Petitioner has failed to make a

substantial showing of the denial of a constitutional right and is not entitled to a certificate of

---

2 In Dorsey v. United States, 132 S.Ct. 2321 (2012), the United States Supreme Court recently
held that the lower mandatory minimum provisions of the FSA do apply to defendants who
committed their offense before the effective date but were sentenced after the FSA took effect.
Dorsey, 132 S.Ct. at 2326.   However, because Mathis' offense and sentencing *both* took place
prior to the enactment of the FSA, Reevey, rather than Dorsey, remains controlling.   See United
States v. Bell, 500 Fed. Appx. 189, 191 (3d Cir. 2012).

appealability.   An appropriate order follows.


Date: September 16, 2013


s/ David Stewart Cercone
David Stewart Cercone
United States District Judge


cc:     Shannon Lamont Mathis
        04981-068, H.U. 5851
        P.O. Box 2000
        Fort Dix, NJ 08640

        (*Via USPS Mail*)


        Marshall J. Piccinini, AUSA
        Jeffrey M. Brandt, Esquire

        (*Via CM/ECF Electronic Mail*)